UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
LUIS SOUSA,                                     )
     *Plaintiff,*                              )
                                             )
VS.                                             )     C.A. NO. 1:22-cv-40120-IT
                                             )
SEEKONK SCHOOL COMMITTEE, and                   )
RICH DROLET, in his personal and official capacities, )
     *Defendants.*                             )
_____

## TABLE OF CONTENTS

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
    EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER
    AND PRELIMINARY INJUNCTION ................................................................1

I. INTRODUCTION ...........................................................................................1

II. BACKGROUND ............................................................................................1

III. ARGUMENT .................................................................................................4

    A.    PRELIMINARY INJUNCTION STANDARD.........................................4

    B.    PLAINTIFF FAILS TO MEET THE PRELIMINARY
         INJUNCTION STANDARD AND, THEREFORE, HIS MOTION
         SHOULD BE DENIED. ............................................................................5

         1.    Plaintiff Fails to Show a Substantial Likelihood of Success
             on the Merits Under Count I of his Complaint. ...............................5

         2.    Plaintiff Fails to Show a Substantial Likelihood of Success
             on the Merits Under Count II of his Complaint.............................10

         3.    The Balance of Hardships and the Public Interest Weigh
             Against an Award of Injunctive Relief to Plaintiff.......................12

IV. CONCLUSION................................................................................................14

CERTIFICATE OF SERVICE ..........................................................................15

# TABLE OF AUTHORITIES

**Cases:**

Adderley v. Florida,
    385 U.S. 39 (1966) ................................................................................................. 10

Ashwander v. TVA,
    297 U.S. 288 (1936) ............................................................................................... 11

Baptiste v. Kennealy,
    490 F. Supp. 3d 353 (D. Mass. 2020) ..................................................................... 4

Boos v. Barry,
    485 U.S. 312 (1988) ............................................................................................... 11

Carlow v. Mruk,
    425 F. Supp. 2d 225 (D.R.I. 2006) .......................................................................... 8

Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez,
    561 U.S. 661 (2010) ................................................................................................. 6

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
    473 U.S. 788 (1985) ................................................................................... 5, 6, 7, 14

Corp. Techs., Inc. v. Harnett,
    731 F.3d 6 (1st Cir. 2013)......................................................................................... 4

Curnin v. Town of Egremont,
    510 F.3d 24 (1st Cir. 2007), *cert. den.*, 128 S.Ct. 2936 (2008)................................ 7

CVS Pharmacy, Inc. v. Lavin,
    951 F.3d 50 (1st Cir. 2020)....................................................................................... 4

Doe v. Hopkinton Pub. Schools,
    19 F.4th 493 (1st Cir. 2021) ................................................................................... 11

Doran v. Salem Inc,
    422 U.S. 922 (1975) ............................................................................................... 12

Doyle v. O'Brien,
    396 U.S. 277 (1970) ................................................................................................. 9

Eichenlaub v. Township of Indiana,
    385 F.3d 274 (3rd Cir. 2004).................................................................................... 7

Esso Std. Oil Co. v. Monroig-Zayas,
   445 F.3d 13 (1st Cir. 2006) ................................................................................. 4, 12

Fairchild v. Liberty Ind. Sch. Dist.,
   597 F.3d 747 (5th Cir. 2010) .................................................................................... 7

Galena v. Leone,
   638 F.3d 186 (3rd Cir. 2011) ................................................................................... 7

Good News Club v. Milford Cent. Sch.,
   533 U.S. 98 (2001) ............................................................................................... 6, 7

Grayned v. City of Rockford,
   408 U.S. 104 (1972) ............................................................................................... 10

Greenberg v. Woodward,
   2001 WL 1688902 (D. Mass. Dec. 12, 2001) ........................................................... 9

Heffron v. International Soc. for Krishna Consciousness,
   452 U.S. 640 (1981) ............................................................................................... 13

Hightower v. City of Boston,
   693 F.3d 61 (1st Cir. 2012) .................................................................................... 11

Hurley v. Hinckley,
   304 F.Supp. 704 (D. Mass. 1969) ), *aff'd sub nom* .................................................. 8

Jones v. Heyman,
   888 F.2d 1328 (11th Cir. 1989) ................................................................................ 8

Kindt v. Santa Monica Rent Control Bd.,
   67 F.3d 266 (9th Cir. 1995) ............................................................................... 8, 13

Libertarian Party of N.H. v. Gardner,
   843 F.3d 20 (1st Cir. 2016) .................................................................................... 11

Lu v. Hulme,
   133 F. Supp. 3d 312 (D. Mass. 2015) ...................................................................... 6

Minnesota State Bd. for Community Coll. v. Knight,
   465 U.S. 271 (1984) ............................................................................................... 13

Munaf v. Geren,
   553 U.S. 674 (2008) ................................................................................................. 5

National Pharmacies, Inc. v. Feliciano-de-Melecio,
  221 F.3d 235 (1st Cir. 2000) ................................................................. 11

New England Reg'l Council of Carpenters v. Kinton,
  284 F.3d 9 (1st Cir. 2002) .................................................................. 6

Niemotko v. Maryland,
  340 U.S. 268 (1951) ........................................................................ 9

Nieves-Marquez v. Puerto Rico,
  353 F.3d 108 (1st Cir. 2003) ............................................................ 4, 5

NuVasive, Inc. v. Day,
  954 F.3d 439 (1st Cir. 2020) .............................................................. 4

O'Brien v. Borowski,
  461 Mass. 415 (2012) .................................................................. 11-12

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
  460 U.S. 37 (1983) ........................................................................ 5, 6

Pleasant Grove City, Utah v. Summum,
  555 U.S. 460 (2009) ........................................................................ 6

Ridley v. MBTA,
  390 F.3d 65 (1st Cir. 2004) .............................................................. 5, 8

Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,
  102 F.3d 12 (1st Cir. 1996) ................................................................ 4

Rowe v. City of Cocoa, Fla.,
  358 F.3d 800 (11th Cir. 2004) ..................................................... 7, 8, 13

Rushia v. Town of Ashburnham, Mass.,
  710 F.2d 7 (1st Cir. 1983) ................................................................ 12

Sabri v. United States,
  541 U.S. 600 (2004) ........................................................................ 11

Steinburg v. Chesterfield Cty. Planning Comm'n,
  527 F.3d 377 (4th Cir. 2008) ..................................................... 7, 8, 13

United States Postal Serv. v. Council of Greenburgh Civic Ass'ns,
  453 U.S. 114 (1981) ........................................................................ 5

United States v. Am. Library Ass'n,
  539 U.S. 194 (2003) ........................................................................................ 7

United States v. Bader,
  698 F.2d 553 (1st Cir. 1983) .......................................................................... 10

United States v. Salerno,
  481 U.S. 739 (1987) ...................................................................................... 10

United States v. Williams,
  553 U.S. 285 (2008) ...................................................................................... 11

Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc.,
  645 F.3d 26 (1st Cir. 2011) ............................................................................. 4

Washington State Grange v. Washington State Republican Party,
  552 U.S. 442 (2008) ...................................................................................... 11

Washington v. Glucksberg,
  521 U.S. 702 (1997) ...................................................................................... 10

White v. City of Norwalk,
  900 F.2d 1421 (9th Cir. 1990) ....................................................................... 13

Youkhanna v. City of Sterling Heights,
  934 F.3d 508 (6th Cir. 2019), *cert. den.*, 140 S.Ct. 1114 (2020) ................... 7

**Constitutional Provisions:**

First Amendment ........................................................................ 1, 5, 9, 11, 12

**Statutes:**

42 U.S.C. § 1983 ............................................................................................. 5

M.G.L. c. 30A, § 20(g) ..................................................................................... 9
M.G.L. c. 30A, §§ 18 – 25 ................................................................................ 1
M.G.L. c. 266, § 120 ................................................................................ 1, 3, 8

**Other Authorities:**

T. Day & E. Bradford, "Civility in Government Meetings: Balancing First Amendment,
  Reputational Interests, and Efficiency," 10 First Amend. L. Rev. 57 (2011) .......................... 13

F. LoMonte, "The Open Mic, Unplugged: Challenges to Viewpoint-Based Constraints on Public-
  Comment Periods," 69 Case W. Res. L. Rev. 19 (Fall 2018) .................................................... 7

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I.  INTRODUCTION

On September 26, 2022, plaintiff, Luis Sousa, disrupted a Seekonk School Committee ("School Committee") by yelling and screaming at the School Committee members from the back of the meeting room. When asked to leave, Mr. Sousa refused to do so but, instead, kept yelling. The School Resource Officer eventually escorted plaintiff from the meeting. This was the second time plaintiff disrupted a School Committee meeting in nine months. On October 4, 2022, Superintendent of Schools Rich Drolet issued a No Trespass Order to plaintiff pursuant to M.G.L. c. 266, § 120. Plaintiff now brings this action against the School Committee and Superintendent for the alleged violation of his rights to free speech as protected under the First Amendment. (ECF Doc. No. 1). In an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, plaintiff also seeks injunctive relief in the form of an order enjoining defendants from enforcing the No Trespass Order. (ECF Doc. No. 2). Defendants hereby oppose plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction and submit this Memorandum of reasons in support of its Opposition. In further Opposition to plaintiff's Emergency Motion, defendants also submit the Affidavit of Richard Drolet and Exhibits A – F thereto.

## II.  BACKGROUND

The School Committee conducts the business of Seekonk Public Schools ("SPS") in meetings held open to the public pursuant to the Massachusetts Open Meeting Law, M.G.L. c. 30A, §§ 18 – 25 ("OML"). Typically, such meetings include two fifteen-minute periods known as "Public Speak," when members of the Seekonk school community may address the School

Committee on matters not on the School Committee's agenda but otherwise within the scope of the School Committee's authority. Public Speak is governed by the "Public Participation at School Committee Meetings" policy ("Public Participation Policy") which includes a set of rules designed to ensure that those who wish to speak will be heard without interfering with the ability of the School Committee to conduct SPS business "in an orderly manner." (Affidavit of Richard Drolet ("Drolet Aff."), ¶ 4, Ex. "A"). Pursuant to the Public Participation Policy, speakers are allotted three minutes apiece, subject to the time limitations of the fifteen-minute period. All speakers "are encouraged to present their remarks in a respectful manner," and the Chair may terminate any speech that is not constitutionally protected. (Id.) Notably, "Public Speak is not a time for debate or response to comments by the School Committee." (Id., ¶ 5).

On October 4, 2022, Superintendent Dr. Drolet issued a Permanent No Trespass Order to plaintiff. (Id., ¶ 17, Ex. "F"). This order was issued in response to two incidents of plaintiff's inappropriate and disruptive behavior on SPS property. The first occurred on January 5, 2022, when the School Committee was holding a meeting in executive session. Although the meeting was not open to the public, plaintiff nonetheless attempted to enter. When he was unsuccessful, plaintiff approached the meeting room from outside the building and began to record the proceedings through the windows. As he did so, plaintiff yelled: "Why are we not allowed at the meeting? You cancelled two meetings. Why can't we go?" (Id., ¶¶ 6 & 7). The School Committee Chair suspended the meeting and called the Seekonk Police Department. Plaintiff admitted to the responding officer that he was upset because he had wanted to speak to the School Committee about the SPS mask mandate for school children but was unable to do so. He also admitted yelling at the School Committee to ask why it was meeting in "secret." (Id., ¶ 8, Ex. "C").

On January 10, 2022, Superintendent Dr. Drolet issued a Temporary No Trespass Order to plaintiff barring him from SPS property based on his January 5th behavior. (Id., ¶ 9, Ex. "D"). On January 18, 2022, Superintendent Dr. Drolet met with plaintiff to give him an opportunity to provide any additional facts or information he believed the Superintendent should take into account before making his final decision. Following his meeting with plaintiff, the Superintendent kept the Temporary No Trespass Order in place but lifted it approximately two-to-three months later. (Id., ¶¶ 10 – 11).

The second incident occurred on September 26, 2022, at a School Committee meeting held in open session. During the first Public Speak segment, plaintiff addressed the School Committee without interruption. During the second Public Speak segment, however, when the School Committee Chair twice attempted to advise plaintiff's wife that her allotted time had expired, plaintiff disrupted the meeting by yelling and screaming from the back of the meeting room: "I'll wait till my wife's done." "Then you should have had the meeting two weeks ago … you're gonna let her talk now!" (Id., ¶ 12). When plaintiff's wife continued to address the School Committee without surrendering the podium, a member of the School Committee attempted to call a recess. Plaintiff yelled "No!" "So who's checking on that child that is so distraught?" "This meeting's a joke!" (Id., ¶ 13). Superintendent Dr. Drolet asked plaintiff to leave the meeting because of his outbursts. Plaintiff refused and continued yelling. The School Resource Officer then entered the meeting room and escorted plaintiff out. Plaintiff continued yelling as he was escorted from the room. (Id., ¶ 14).

On September 27, 2022, Superintendent Dr. Drolet issued a Notice of Intent to Issue a Permanent No Trespass Order to plaintiff pursuant to M.G.L. c. 266, § 120. (Id., ¶ 15, Ex. "E"). On October 3, 2022, plaintiff met with the Superintendent and denied he had engaged in

inappropriate or disruptive behavior at the September 26, 2022 School Committee meeting. Rather, he explained: "I'm a loud person," "I'm passionate," and "[I was] trying to say what I wanted to say." (Id., ¶ 16). On October 4, 2022, the Superintendent issued a Permanent No Trespass Order to plaintiff barring plaintiff from SPS property. (Id., ¶ 17, Ex. "F").

## III.  ARGUMENT

### A.    PRELIMINARY INJUNCTION STANDARD.

To obtain a preliminary injunction, plaintiff bears the burden of demonstrating "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). See Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Plaintiff bears the burden of demonstrating that each of the four factors weighs in his favor. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). However, "the four factors are not entitled to equal weight in the decisional calculus; rather, '[l]ikelihood of success is the main bearing wall of the four-factor framework.'" Corp. Techs., Inc., 731 F.3d at 9-10 (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)). See CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (substantial likelihood of success "weighs most heavily in the preliminary injunction analysis."); Baptiste v. Kennealy, 490 F. Supp. 3d 353, 380 (D. Mass. 2020) (substantial likelihood of success on merits is the "sine qua non for obtaining a preliminary injunction").

Further, a preliminary injunction is an "extraordinary and drastic remedy." Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting

Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). Such an extraordinary remedy "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

**B.    PLAINTIFF FAILS TO MEET THE PRELIMINARY INJUNCTION STANDARD AND, THEREFORE, HIS MOTION SHOULD BE DENIED.**

**1.    Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count I of his Complaint.**

In Count I of his Complaint, plaintiff seeks to recover under 42 U.S.C. § 1983 for defendants' alleged deprivation of his right to free speech as protected under the First Amendment of the United States Constitution. The Constitution does not require government to grant access to all who wish to exercise their right of free speech on government property "without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799-800 (1985). The extent to which government can exercise control over speech on its property depends on the nature of the relevant forum. United States Postal Serv. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 129 (1981) ("First Amendment does not guarantee access to property simply because it is owned or controlled by the government.")

First Amendment law recognizes three types of fora; the traditional public forum, the designated public forum, and the limited or non-public forum. Ridley v. MBTA, 390 F.3d 65, 76 (1st Cir. 2004). The traditional public forum consists of "places which by long tradition or by government fiat have been devoted to assembly and debate …," such as streets, parks and public sidewalks. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). In a traditional public forum, content-neutral time, place and manner restrictions are subject to strict

scrutiny and will only be upheld if they are "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." Id.

A designated public forum consists of public property that government has, by both expressed intention and actual practice, opened up as a place for expressive activity. Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469 (2009). Content-neutral restrictions on speech in a designated public forum "are subject to the same strict scrutiny as restrictions in a traditional public forum." Id., at 469-470; New England Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 20 (1st Cir. 2002).

A limited or non-public forum is created "when the government opens its property only to use by certain groups or for the discussion of certain subjects." Lu v. Hulme, 133 F. Supp. 3d 312, 324-325 (D. Mass. 2015) (citing Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 679 n.11 (2010)). Government has the right to preserve public property for the use to which it is lawfully dedicated and, therefore, reasonable restrictions on non-public fora are permitted. In a limited public forum, control over access "can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral." Cornelius, 473 U.S. at 806; Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-107 (2001).

The Public Speak segment of School Committee meetings is not open to the general public. Nor is it a time when speakers may address any subject whatsoever. Rather, Public Speak is a time when "members of the Seekonk school community" may address "items that are not on the School Committee's agenda, but which are within the scope of the School Committee's authority." (Drolet Aff., Ex. "A"). Speakers must identify themselves by name and address and shall address their remarks through the Chair. Time limits apply to all speakers, and speakers

should not engage in debate with the School Committee. (Id.) Given such restrictions, the Public

Speak segment qualifies as a limited public forum. See Galena v. Leone, 638 F.3d 186, 199 (3rd

Cir. 2011) (county council meeting held a limited public forum); Steinburg v. Chesterfield Cty.

Planning Comm'n, 527 F.3d 377, 385 (4th Cir. 2008) (planning commission meeting held a

limited public forum); Fairchild v. Liberty Ind. Sch. Dist., 597 F.3d 747, 759 (5th Cir. 2010)

(public comment session of school board meeting held a limited public forum); Youkhanna v.

City of Sterling Heights, 934 F.3d 508, 518-519 (6th Cir. 2019), *cert. den.*, 140 S.Ct. 1114

(2020) (city council meeting held limited public forum); Rowe v. City of Cocoa, Fla., 358 F.3d

800, 803 (11th Cir. 2004) (public comment session of city council meeting held a limited public

forum).

While court decisions on the issue are not unanimous, "[t]he prevailing view is that a

public-comment session is more akin to a limited public forum, in which content discrimination

is permissible and government restrictions are viewed more deferentially." F. LoMonte, "The

Open Mic, Unplugged: Challenges to Viewpoint-Based Constraints on Public-Comment

Periods," 69 Case W. Res. L. Rev. 19, 33 (Fall 2018). The First Circuit has not yet decided the

issue, but has stated: "[Town Meetings are] neither a traditional nor a designated public forum."

Curnin v. Town of Egremont, 510 F.3d 24, 29 n.4 (1st Cir. 2007), *cert. den.*, 128 S.Ct. 2936

(2008) (quoting United States v. Am. Library Ass'n, 539 U.S. 194, 205 (2003)). If a Town

Meeting is a limited public forum, a School Committee meeting, by analogy, is a limited public

forum as well.

Restrictions placed on plaintiff's speech were both "reasonable in light of the purpose

served by the forum …," Good News, 533 U.S. at 106 (quoting Cornelius, 473 U.S. at 806); and

viewpoint-neutral. Eichenlaub v. Township of Indiana, 385 F.3d 274, 280 (3rd Cir. 2004).

Therefore, such restrictions – *i.e.*, instructing plaintiff to leave the meeting after he yelled (and would not stop yelling) from the back of the meeting room – did not violate plaintiff's right of free speech. As the First Circuit has explained: "The reasonableness standard is not a particularly high hurdle; there can be more than one reasonable decision, and an action need not be the most reasonable decision possible in order to be reasonable." Ridley, 390 F.3d at 90.

The main purpose of the September 26, 2022 School Committee meeting was to conduct the business of SPS. A government body, like the School Committee, has a "significant governmental interest in conducting orderly, efficient meetings …." Carlow v. Mruk, 425 F. Supp. 2d 225, 242 (D.R.I. 2006) (quoting Rowe, 358 F.3d at 803). See Kindt v. Santa Monica Rent Control Bd., 67 F.3d 266, 271 (9th Cir. 1995) (Board has "legitimate interest in conducting efficient orderly meetings"). Thus, any speech that disturbs or disrupts a meeting of a government body may be restricted. See Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989) (upholding ejection of speaker from city commission meeting based on "irrelevant" and "disruptive" speech); Steinburg, 527 F.3d at 385 ("disruption of the orderly conduct of public meetings is indeed one of the substantive evils that [government] has a right to prevent") (internal citation and quotation omitted). Shouting from the back of the room: "You're gonna let her talk!"; "This meeting's a joke!"; clearly disrupted the School Committee meeting. Furthermore, the ensuing instruction that plaintiff must leave the meeting was not based on his viewpoint. Rather, it was based on plaintiff's choice of words and tone and method of delivery.

The Massachusetts Legislature has made it clear that a government body need not tolerate disruptive speech or behavior at public meetings. The OML states, in part:

> (g) No person shall address a meeting of a public body without permission of the chair, and all persons shall, at the request of the chair, be silent. No person shall disrupt the proceedings of a meeting of a public body. If, after clear warning from the chair, a person continues to disrupt the proceedings, the chair may order the person to withdraw from the

meeting and if the person does not withdraw, the chair may authorize a constable or other officer to remove the person from the meeting.

M.G.L. c. 30A, § 20(g). Following plaintiff's outbursts, the School Committee was entitled to ask plaintiff to leave under its Public Participation Policy, the OML and the First Amendment. Defendants did not violate plaintiff's freedom of speech. Therefore, he cannot show a substantial likelihood of success on the merits of Count I.

The Massachusetts No Trespass Statute states in part:

Whoever, without right enters or remains in or upon the … buildings … or improved or enclosed land … of another, … after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon, … shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine or imprisonment.

M.G.L. c. 266, § 120. As a three-judge District Court once observed: "[T]he trespass statute is not aimed at regulating speech or communication *in any form* …." Hurley v. Hinckley, 304 F.Supp. 704, 708 (D. Mass. 1969), *aff'd sub nom*, Doyle v. O'Brien, 396 U.S. 277 (1970) (per curiam) (emphasis added). Rather, it targets conduct – *i.e.*, trespassing. Thus, in Hurley, the Court rejected plaintiffs' claims that a municipality's use of the No Trespass Statute to restrict plaintiffs' access to Town Hall violated their First Amendment rights.

Admittedly, a permissible regulation may not be used to target conduct "intertwined" with protected speech on government property, "unless the actor or actors disrupt the uses to which the public has dedicated the property, or unreasonably interfere with the right of others to enter and leave the property." Hurley, 304 F. Supp. at 708 (citing Niemotko v. Maryland, 340 U.S. 268, 273-289 (1951) (Frankfurter, J., concurring)). See Greenberg v. Woodward, 2001 WL 1688902, at *3 (D. Mass. Dec. 12, 2001) (no First Amendment violation for enforcing statute against professor who entered college building in violation of no trespass order). Here, defendants did not target plaintiff's speech. Superintendent Dr. Drolet issued the No Trespass

Order to plaintiff based on Mr. Sousa's disruptive behavior at the School Committee meeting on September 26, 2022. Period. Mr. Sousa was not recognized by the Chair, did not come forward to the podium and did not address his remarks to the Chair. Instead, he shouted his outbursts to the entire body from the back of the room while the Chair was attempting to advise plaintiff's wife that her Public Speak time had expired. Even when "pure speech" is at issue (which is not the case here), government may restrict "[t]he right to use a public place for expressive activity" through "reasonable 'time, place and manner' regulations [which] may be necessary to further significant government interests...." United States v. Bader, 698 F.2d 553, 555 (1st Cir. 1983) (quoting Grayned v. City of Rockford, 408 U.S. 104, 115 (1972). The need to safeguard the "normal functioning of public facilities" is a "'substantial government interest" sufficient to warrant reasonable restrictions on even 'pure speech,' let alone symbolic conduct." Bader, 698 F.2d at 555 (quoting Adderley v. Florida, 385 U.S. 39 (1966)).

Enforcement of the Public Participation Policy by means of the No Trespass Order did not violate plaintiff's freedom of speech. For this reason as well, plaintiff cannot show a substantial likelihood of success on the merits of Count I.

**2.    Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count II of his Complaint.**

In Count II of his Complaint, plaintiff mounts a facial challenge to the Public Participation Policy on the grounds it is unconstitutionally vague because the word "respectful" can and has been used "pretextually and inconsistently." (ECF Doc. No. 1, ¶ 50). At the outset, a facial challenge to a statute, regulation or policy is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute, regulation or policy] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). See Washington v. Glucksberg, 521 U.S. 702, 739-740 & n.7 (1997) (Stevens, J.,

concurring) (facial challenge must fail where statute has a "plainly legitimate sweep");
Hightower v. City of Boston, 693 F.3d 61, 77-78 (1st Cir. 2012) (facial challenge fails where
plaintiff fails to demonstrate statute lacks any "plainly legitimate sweep"). This burden of
showing no "plainly legitimate sweep" is heightened in the context of the First Amendment
where a statute will not be struck down as facially invalid unless "it prohibits a substantial
amount of protected speech." Doe v. Hopkinton Pub. Schools, 19 F.4th 493, 509 (1st Cir. 2021)
(quoting United States v. Williams, 553 U.S. 285, 292 (2008)).

Moreover, facial challenges are "disfavored," as they often rest on speculation and, as a
result, "raise the risk of 'premature interpretation of statutes on the basis of factually barebones
records.'" Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450
(2008) (quoting Sabri v. United States, 541 U.S. 600, 609 (2004)). Such challenges also "run
contrary to the fundamental principle of judicial restraint that courts should neither anticipate a
question of constitutional law in advance of the necessity of deciding it nor formulate a rule of
constitutional law broader than is required by the precise facts to which it is to be applied." Id.
(quoting Ashwander v. TVA, 297 U.S. 288, 346-347 (1936)) (quotations omitted). See
Libertarian Party of N.H. v. Gardner, 843 F.3d 20, 25 (1st Cir. 2016) (Court views facial
challenge with "some skepticism" absent actual demonstration of constitutional violation).

Finally, courts are obligated, whenever possible, to construe statutes narrowly so as to
avoid constitutional difficulties. Boos v. Barry, 485 U.S. 312, 331 (1988). See National
Pharmacies, Inc. v. Feliciano-de-Melecio, 221 F.3d 235, 241 (1st Cir. 2000) (federal courts
render interpretations of state law using same methods as state courts, including principle that
statutes should be given constitutional interpretations where possible); O'Brien v. Borowski, 461

Mass. 415, 422 (2012) (Massachusetts courts construe statutes narrowly to avoid unconstitutional results).

Here, the Public Participation Policy does not lack any "plainly legitimate sweep." As a public body, the School Committee is clearly permitted to adopt reasonable rules of order and decorum to conduct SPS business. In such rules, the School "encourages," *but does not require*, all Public Speak participants to "present their remarks in a respectful manner." Notwithstanding that plea for civility, the School Committee warns the public: "Because of constitutional free speech principles, the School Committee does not have the authority to prevent all speech that may be upsetting and/or offensive at Public Speak." (Drolet Aff., Ex. "A"). Indeed, the School Committee expressly acknowledges that the Chair "may not interrupt speakers who have been recognized to speak," except "to terminate speech which is not constitutionally protected …." In light of such limitations, it is abundantly clear that disrespectful remarks which are otherwise protected by the First Amendment *are not prohibited* by the Public Participation Policy. This interpretation of the Policy comports with the First Amendment.

3.    **The Balance of Hardships and the Public Interest Weigh Against an Award of Injunctive Relief to Plaintiff.**

As stated above, plaintiff bears the burden of establishing that the four factors of a preliminary injunction weigh in his favor. Esso Std. Oil, 445 F.3d at 18. Insofar as the third factor is concerned – the balance of hardships – the standard to be applied is a "stringent" one, requiring a court to carefully weigh the interests on both sides. Rushia v. Town of Ashburnham, Mass., 710 F.2d 7, 10 (1st Cir. 1983) (citing Doran v. Salem Inc, Inc., 422 U.S. 922, 931 (1975)). Here, the purpose of the September 26, 2022 School Committee was to conduct SPS business. Although the School Committee invited the Seekonk school community to participate in the meeting by including Public Speak on the agenda, it was not required to do so. To be clear,

members of the public do not have a guaranteed right "to be heard by public bodies making decisions of policy." Minnesota State Bd. for Community Coll. v. Knight, 465 U.S. 271, 284 (1984). See Heffron v. International Soc. for Krishna Consciousness, 452 U.S. 640, 647 (1981) ("First Amendment does not guarantee [persons] the right to communicate [their] views at all times and places or in any manner that may be desired."); Kindt, 67 F.3d at 269 ("Citizens are not entitled to exercise their First Amendment rights whenever and wherever they wish.")

Admittedly, when government creates a forum for citizen input at public meetings such as Public Speak, constitutional guarantees apply. Still, government may require speakers to adhere to reasonable rules of civility during its meetings or proceedings, provided it does not do so in a way that silences viewpoints it disfavors. See Rowe, 358 F.3d at 803 ("There is a significant governmental interest in conducting orderly, efficient meetings of public bodies."); Steinburg, 527 F.3d at 387 ("[A] content-neutral policy against personal attacks is not facially unconstitutional" so long as it serves "the legitimate public interest … of decorum and order"); White v. City of Norwalk, 900 F.2d 1421, 1426 (9th Cir. 1990) (rules of decorum that proscribe against "personal, impertinent, slanderous or profane" remarks at city council meeting held not unconstitutional).

"[L]ocal entities can adopt rules of decorum that require speakers at government meetings to maintain relevancy and civility when commenting." T. Day & E. Bradford, "Civility in Government Meetings: Balancing First Amendment, Reputational Interests, and Efficiency," 10 First Amend. L. Rev. 57, 63 (2011).

> The "policy against 'personal attacks' focuses on two evils that could erode the beneficence of orderly public discussion." These policies further the dual interests of keeping public discussion on topic and reducing defensiveness and counter-argumentation. Both of these interests serve to maintain the orderly conduct of the meeting.

Id., at 63-64 (footnotes omitted). And any public speaker who violates such rules or policy may be excluded from a meeting provided the exclusion is not an effort to suppress the expression of views contrary to public officials. Cornelius, 473 U.S. at 800.

Defendants do not take lightly plaintiff's protected right of free speech. But where plaintiff exercises that right while simultaneously engaging in inappropriate conduct that disrupts the School Committee's ability to conduct important SPS business, the School Committee cannot (and should not) overlook the misbehavior simply because it accompanies a message. The public has a right to attend School Committee meetings without disruption. The School Committee has a right to conduct SPS business without disruption. At the same time plaintiff remains free to communicate with the School Committee and Superintendent via mail, email or telephone. Plaintiff has failed to make a "clear showing" that he is entitled to the "extraordinary and drastic" relief of a preliminary injunction and, therefore, his Motion should be denied.

## IV.  CONCLUSION

For the reasons set forth above, this Honorable Court should deny plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

The Defendants,
SEEKONK SCHOOL COMMITTEE, and
RICH DROLET, in his personal capacity and official
capacities,

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ John J. Davis*

_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: November 7, 2022

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on November 7, 2022.

*/s/ John J. Davis*

_____
John J. Davis, Esq.