UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| LUIS SOUSA, | ) |
|     *Plaintiff,* | ) |
| | ) |
| vs. | )     C.A. NO. 1:22-cv-40120-IT |
| | ) |
| SEEKONK SCHOOL COMMITTEE, RICH DROLET, | ) |
| in his personal and official capacities, and KIMBERLY | ) |
| SLUTER, in her personal and official capacities, | ) |
|     *Defendants.* | ) |

_____

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
    FOR PRELIMINARY INJUNCTION..................................................................1

I.     INTRODUCTION ...............................................................................1

II.     BACKGROUND .................................................................................2

III.     ARGUMENT.......................................................................................5

    A.     PRELIMINARY INJUNCTION STANDARD...........................5

    B.     PLAINTIFF FAILS TO MEET THE PRELIMINARY
        INJUNCTION STANDARD AND, THEREFORE, HIS MOTION
        SHOULD BE DENIED. ...............................................................6

        1.     Plaintiff Fails to Show a Substantial Likelihood of Success
            on the Merits Under Count I of his First Amended
            Complaint.........................................................................6

        2.     Plaintiff Fails to Show a Substantial Likelihood of Success
            on the Merits Under Count II of his First Amended
            Complaint.........................................................................12

        3.     Plaintiff Fails to Show a Substantial Likelihood of Success
            on the Merits Under Count III of his First Amended
            Complaint.........................................................................15

4.      Plaintiff Fails to Show a Substantial Likelihood of Success
        on the Merits Under Count IV of his First Amended
        Complaint...................................................................................17

5.      The Balance of Hardships and the Public Interest Weigh
        Against an Award of Injunctive Relief to Plaintiff........................19

IV.     CONCLUSION.......................................................................................20

CERTIFICATE OF SERVICE ........................................................................................21

# TABLE OF AUTHORITIES

**Cases**

Adderley v. Florida,
  385 U.S. 39 (1966) ................................................................................................ 12

Ashwander v. TVA,
  297 U.S. 288 (1936) .............................................................................................. 13

Baptiste v. Kennealy,
  490 F. Supp. 3d 353 (D. Mass. 2020) ................................................................... 5

Boos v. Barry,
  485 U.S. 312 (1988) .............................................................................................. 13

Bragdon v. Abbott,
  524 U.S. 624 (1998) .............................................................................................. 15

Buchanan v. Maine,
  469 F.3d 158 (1st Cir. 2006) ................................................................................ 17

Bush v. Fantasia,
  2022 WL 4134501 (D. Mass. Sept. 12, 2022) ..................................................... 17

Carlow v. Mruk,
  425 F. Supp. 2d 225 (D.R.I. 2006) ......................................................................... 9

Carreras v. Sajo, Garcia & Partners,
  596 F.3d 25 (1st Cir. 2010) ............................................................................ 15, 16

Charles v. Johnson,
  18 F.4th 686 (11th Cir. 2021) ............................................................................... 15

Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez,
  561 U.S. 661 (2010) ................................................................................................ 7

Cordi-Allen v. Conlon,
  494 F.3d 245 (1st Cir. 2007) ................................................................................ 18

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
  473 U.S. 788 (1985) .................................................................................. 6, 7, 9, 20

Corp. Techs., Inc. v. Harnett,
  731 F.3d 6 (1st Cir. 2013) ....................................................................................... 5

Curnin v. Town of Egremont,
    510 F.3d 24 (1st Cir. 2007), *cert. den.*, 128 S.Ct. 2936 (2008) ................................. 8

CVS Pharmacy, Inc. v. Lavin,
    951 F.3d 50 (1st Cir. 2020) ........................................................................ 5

Davis v. Colerain Township,
    551 F. Supp. 3d 812 (S.D. Ohio 2021) ....................................................... 14

Davison v. Rose,
    19 F.4th 626 (4th Cir. 2021) ....................................................................... 11

Doe v. Hopkinton Pub. Schools,
    19 F.4th 493 (1st Cir. 2021) ....................................................................... 12

Doran v. Salem Inc,
    422 U.S. 922 (1975) ................................................................................... 19

Doyle v. O'Brien,
    396 U.S. 277 (1970) ................................................................................... 10

Dyer v. Atlanta Ind. Sch. System,
    852 Fed. App'x 397 (11th Cir.), *cert. denied*, 142 S.Ct. 484 (2021) ............... 15

Eichenlaub v. Township of Indiana,
    385 F.3d 274 (3rd Cir. 2004) ........................................................................ 9

Esso Std. Oil Co. v. Monroig-Zayas,
    445 F.3d 13 (1st Cir. 2006) ..................................................................... 5, 19

Fairchild v. Liberty Ind. Sch. Dist.,
    597 F.3d 747 (5th Cir. 2010) ....................................................................... 7

Freeman v. Town of Hudson,
    714 F.3d 29 (1st Cir. 2013) ......................................................................... 18

Galena v. Leone,
    638 F.3d 186 (3rd Cir. 2011) ....................................................................... 8

Good News Club v. Milford Cent. Sch.,
    533 U.S. 98 (2001) .................................................................................. 7, 9

Grant v. Slattery,
    2022 WL 4550632 (D.N.J. Sept. 29, 2022) .............................................. 8, 11

Grayned v. City of Rockford,
     408 U.S. 104 (1972) ........................................................................ 11

Greenberg v. Woodward,
     2001 WL 1688902 (D. Mass. Dec. 12, 2001)...................................... 11

Heffron v. International Soc. for Krishna Consciousness,
     452 U.S. 640 (1981) ........................................................................ 19

Henrietta D. v. Bloomberg,
     331 F.3d 261 (2d Cir. 2003) ............................................................ 16

Hightower v. City of Boston,
     693 F.3d 61 (1st Cir. 2012) .............................................................. 12

Hurley v. Hinckley,
     304 F. Supp. 704 (D. Mass. 1969), *aff'd sub nom*........................... 10, 11

Jones v. Heyman,
     888 F.2d 1328 (11th Cir. 1989) ......................................................... 9

Kindt v. Santa Monica Rent Control Bd.,
     67 F.3d 266 (9th Cir. 1995) ............................................................ 9, 19

Libertarian Party of N.H. v. Gardner,
     843 F.3d 20 (1st Cir. 2016) .............................................................. 13

Lu v. Hulme,
     133 F. Supp. 3d 312 (D. Mass. 2015)................................................. 7

Mama Bears of Forsyth County v. McCall,
     C.A. No. 2:22-cv-142-RWS (N.D. Ga. Nov. 16, 2022) ................... 8, 14, 15

Mancini v. City of Providence,
     909 F.3d 32 (1st Cir. 2018) .............................................................. 16

McBreairty v. School Bd. of RSU 22,
     2022 WL 2835458 (D. Me. July 20, 2022) ........................................ 8, 9

Middleborough Veterans' Outreach Ctr., Inc. v. Provencher,
     502 Fed. App'x 8 (1st Cir. 2013)...................................................... 18

Minnesota State Bd. for Community Coll. v. Knight,
     465 U.S. 271 (1984) ........................................................................ 19

Moms for Liberty – Brevard County, FL v. Brevard Public Schools,
   582 F. Supp. 3d 1214 (M.D. Fla. 2022)..................................................................15

Munaf v. Geren,
   553 U.S. 674 (2008) ......................................................................................................5

Najas Realty, LLC v. Seekonk Water Dist.,
   821 F.3d 134 (1st Cir. 2016) ......................................................................................18

National Pharmacies, Inc. v. Feliciano-de-Melecio,
   221 F.3d 235 (1st Cir. 2000) ......................................................................................13

New England Reg'l Council of Carpenters v. Kinton,
   284 F.3d 9 (1st Cir. 2002) ............................................................................................7

Niemotko v. Maryland,
   340 U.S. 268 (1951) ....................................................................................................11

Nieves-Marquez v. Puerto Rico,
   353 F.3d 108 (1st Cir. 2003) ........................................................................................5

NuVasive, Inc. v. Day,
   954 F.3d 439 (1st Cir. 2020) ........................................................................................5

O'Brien v. Borowski,
   461 Mass. 415 (2012) ..................................................................................................13

Olmstead v. L.C., *ex rel.* Zimring,
   527 U.S. 581 (1999) ....................................................................................................16

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
   460 U.S. 37 (1983) ........................................................................................................6

Pleasant Grove City, Utah v. Summum,
   555 U.S. 460 (2009) ......................................................................................................6

Rabinovitz v. Rogato,
   60 F.3d 906 (1st Cir. 1995) ........................................................................................17

Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n,
   610 F.3d 8 (1st Cir. 2010) ..........................................................................................18

Ridley v. MBTA,
   390 F.3d 65 (1st Cir. 2004) ......................................................................................6, 9

Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,
102 F.3d 12 (1st Cir. 1996) ....................................................... 5

Rowe v. City of Cocoa, Fla.,
358 F.3d 800 (11th Cir. 2004) ........................................... 8, 9, 19

Rushia v. Town of Ashburnham, Mass.,
710 F.2d 7 (1st Cir. 1983) ....................................................... 19

Sabri v. United States,
541 U.S. 600 (2004) ............................................................... 13

Snyder v. Gaudet,
756 F.3d 30 (1st Cir. 2014) .................................................... 17

Steinburg v. Chesterfield Cty. Planning Comm'n,
527 F.3d 377 (4th Cir. 2008) ............................................ 7, 9, 19

United States Postal Serv. v. Council of Greenburgh Civic Ass'ns,
453 U.S. 114 (1981) ................................................................. 6

United States v. Am. Library Ass'n,
539 U.S. 194 (2003) ................................................................. 8

United States v. Bader,
698 F.2d 553 (1st Cir. 1983) ............................................. 11, 12

United States v. Salerno,
481 U.S. 739 (1987) ............................................................... 12

United States v. Williams,
553 U.S. 285 (2008) ............................................................... 12

Village of Willowbrook v. Olech,
528 U.S. 562 (2000) ............................................................... 17

Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc.,
645 F.3d 26 (1st Cir. 2011) ...................................................... 5

Washington State Grange v. Washington State Republican Party,
552 U.S. 442 (2008) ........................................................... 12-13

Washington v. Glucksberg,
521 U.S. 702 (1997) ............................................................... 12

White v. City of Norwalk,
  900 F.2d 1421 (9th Cir. 1990) .................................................................. 19

Wholey v. Tyrell,
  567 F. Supp. 2d 279 (D. Mass. 2008) ...................................................... 11

Youkhanna v. City of Sterling Heights,
  934 F.3d 508 (6th Cir. 2019), *cert. den.*, 140 S.Ct. 1114 (2020) ............................................. 8

## Constitutional Provisions

First Amendment ............................................................................... *passim*

## Statutes

42 U.S.C. § 1983 ............................................................................. 6, 17
42 U.S.C. § 12102(1)(A) ................................................................. 15, 16
42 U.S.C. § 12132 ........................................................................... 15, 16

M.G.L. c. 30A, § 20(g) ........................................................................ 10
M.G.L. c. 30A, §§ 18 – 25 ..................................................................... 2
M.G.L. c. 266, § 120 ................................................................... 1, 4, 10

## Regulations

28 C.F.R. § 35.108 ............................................................................. 15
28 C.F.R. § 35.108(d)(1)(v) ............................................................... 16

## Other Authorities

T. Day & E. Bradford, "Civility in Government Meetings: Balancing First Amendment,
  Reputational Interests, and Efficiency," 10 First Amend. L. Rev. 57 (2011) .......................... 20

F. LoMonte, "The Open Mic, Unplugged: Challenges to Viewpoint-Based Constraints on
  Public-Comment Periods," 69 Case W. Res. L. Rev. 19 (Fall 2018) ........................................ 8

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION[1]**

On November 23, 2022, Superintendent Dr. Rich Drolet issued a Modified No Trespass Order ("Modified Order") to plaintiff, Luis Sousa, a true and accurate copy of which is attached hereto as Exhibit 1. In the Modified Order, the Superintendent rescinded the prohibitions set forth in the Permanent No Trespass Order dated October 4, 2022 and, instead, advised plaintiff that he was forbidden from attending meetings of the Seekonk School Committee for a period of one (1) year, until November 23, 2023. Refusing to accept any consequences for his behavior at previous School Committee meetings whatsoever, plaintiff continues to petition this Court for injunctive relief in the form of a preliminary injunction enjoining the School Committee from enforcing this one-year ban. The Court should deny such relief.

## I. INTRODUCTION

On September 26, 2022, plaintiff, Luis Sousa, disrupted a Seekonk School Committee ("School Committee") by yelling and screaming at the School Committee members from the back of the meeting room. He did not approach the podium and had not been recognized by the Chair to speak. When asked to leave, Mr. Sousa refused to do so but, instead, kept yelling from the back of the room. The School Resource Officer eventually escorted plaintiff from the meeting. This was the second time plaintiff disrupted a School Committee meeting in nine months. On October 4, 2022, Superintendent of Schools Dr. Rich Drolet issued a No Trespass Order to plaintiff pursuant to M.G.L. c. 266, § 120. Plaintiff now brings this action against the School Committee, the Superintendent and former School Committee Chair Kimberly Sluter, for the alleged violation of his rights to free speech as protected under the First Amendment, for handicap discrimination under the Americans with Disabilities Act ("ADA"), and for the alleged deprivation of his rights

---

[1] Defendant Kimberly Sluter has not yet been served and, therefore, does not join in this Opposition.

to equal protection as guaranteed under the Fourteenth Amendment. (ECF Doc. No. 27). In a Renewed Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction (ECF Doc. No. 28), plaintiff also seeks injunctive relief in the form of an order enjoining defendants from enforcing the No Trespass Order. Because that No Trespass Order was rescinded on November 23, 2022, plaintiff's Renewed Emergency Motion now addresses (by necessity) the Modified Order with the one-year School Committee ban. (See Exhibit 1). Defendants hereby oppose plaintiff's Renewed Emergency Motion and submit this Memorandum of Reasons in support of their Opposition. In further Opposition to plaintiff's Renewed Emergency Motion, defendants rely upon the Affidavit of Richard Drolet and Exhibits A – F thereto submitted on November 7, 2022. (ECF Doc. No. 16-1).

## II. BACKGROUND

The School Committee conducts the business of Seekonk Public Schools ("SPS") in meetings held open to the public pursuant to the Massachusetts Open Meeting Law, M.G.L. c. 30A, §§ 18 – 25 ("OML"). Typically, such meetings include two fifteen-minute periods known as "Public Speak," when members of the Seekonk school community may address the School Committee on matters not on the School Committee's agenda but otherwise within the scope of the School Committee's authority. Public Speak is governed by the "Public Participation at School Committee Meetings" policy ("Public Participation Policy") which includes a set of rules designed to ensure that those who wish to speak will be heard without interfering with the ability of the School Committee to conduct SPS business "in an orderly manner." (Affidavit of Richard Drolet ("Drolet Aff."), ¶ 4, Ex. "A"). Pursuant to the Public Participation Policy, speakers are allotted three minutes apiece, subject to the time limitations of the fifteen-minute period. All speakers "are encouraged to present their remarks in a respectful manner," and the Chair may terminate any

speech that is not constitutionally protected. (Id.) Notably, "Public Speak is not a time for debate or response to comments by the School Committee." (Id., ¶ 5).

On October 4, 2022, Superintendent Dr. Drolet issued a Permanent No Trespass Order to plaintiff. (Id., ¶ 17, Ex. "F"). This Order was issued in response to two incidents of plaintiff's inappropriate and disruptive behavior on SPS property. The first occurred on January 5, 2022, when the School Committee was holding a meeting in executive session. Although the meeting was not open to the public, plaintiff nonetheless attempted to enter. When he was unsuccessful, plaintiff approached the meeting room from outside the building and began to record the proceedings through the windows. As he did so, plaintiff yelled: "Why are we not allowed at the meeting? You cancelled two meetings. Why can't we go?" (Id., ¶¶ 6 & 7). The School Committee Chair suspended the meeting and called the Seekonk Police Department. Plaintiff admitted to the responding officer that he was upset because he had wanted to speak to the School Committee about the SPS mask mandate for school children but was unable to do so. He also admitted yelling at the School Committee to ask why it was meeting in "secret." (Id., ¶ 8, Ex. "C").

On January 10, 2022, Superintendent Dr. Drolet issued a Temporary No Trespass Order to plaintiff barring him from SPS property based on his January 5th behavior. (Id., ¶ 9, Ex. "D"). On January 18, 2022, Superintendent Dr. Drolet met with plaintiff to give him an opportunity to provide any additional facts or information he believed the Superintendent should take into account before making his final decision. Following his meeting with plaintiff, the Superintendent kept the Temporary No Trespass Order in place but lifted it approximately two-to-three months later. (Id., ¶¶ 10 – 11).

The second disruptive incident occurred on September 26, 2022, at a School Committee meeting held in open session. During the first Public Speak segment, plaintiff addressed the School

Committee without interruption. During the second Public Speak segment, however, when the School Committee Chair twice attempted to advise plaintiff's wife that her allotted time had expired, plaintiff disrupted the meeting by yelling and screaming from the back of the room: "I'll wait till my wife's done." "Then you should have had the meeting two weeks ago … you're gonna let her talk now!" (Id., ¶ 12). When plaintiff's wife continued to address the School Committee without surrendering the podium, a member of the School Committee attempted to call a recess. Plaintiff yelled "No!" "So who's checking on that child that is so distraught?" "This meeting's a joke!" (Id., ¶ 13). Superintendent Dr. Drolet asked plaintiff to leave the meeting because of his outbursts. Plaintiff refused and continued yelling from the back of the room. The School Resource Officer then entered the meeting room and escorted plaintiff out. Plaintiff continued yelling as he was escorted from the room. (Id., ¶ 14).

On September 27, 2022, Superintendent Dr. Drolet issued a Notice of Intent to Issue a Permanent No Trespass Order to plaintiff pursuant to M.G.L. c. 266, § 120. (Id., ¶ 15, Ex. "E"). On October 3, 2022, plaintiff met with the Superintendent and denied he had engaged in inappropriate or disruptive behavior at the September 26, 2022 School Committee meeting. Rather, he explained: "I'm a loud person," "I'm passionate," and "[I was] trying to say what I wanted to say." (Id., ¶ 16). On October 4, 2022, the Superintendent issued a Permanent No Trespass Order to plaintiff barring plaintiff from SPS property. (Id., ¶ 17, Ex. "F").

On November 23, 2022, Superintendent Dr. Drolet rescinded the No Trespass Order dated October 4, 2022 and issued to plaintiff a Modified Order. Under the Modified Order, plaintiff is forbidden from attending meetings of the Seekonk School Committee for a period of one (1) year, until November 23, 2023. (Exhibit 1).

### III.  ARGUMENT

A.    <u>**PRELIMINARY INJUNCTION STANDARD.**</u>

To obtain a preliminary injunction, plaintiff bears the burden of demonstrating "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). See Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Plaintiff bears the burden of demonstrating that each of the four factors weighs in his favor. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). However, "the four factors are not entitled to equal weight in the decisional calculus; rather, '[l]ikelihood of success is the main bearing wall of the four-factor framework.'" Corp. Techs., Inc., 731 F.3d at 9-10 (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)). See CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (substantial likelihood of success "weighs most heavily in the preliminary injunction analysis."); Baptiste v. Kennealy, 490 F. Supp. 3d 353, 380 (D. Mass. 2020) (substantial likelihood of success on merits is the "sine qua non for obtaining a preliminary injunction").

Further, a preliminary injunction is an "extraordinary and drastic remedy." Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). Such an extraordinary remedy "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Nieves-Marquez, 353 F.3d at 120.

**B.  PLAINTIFF FAILS TO MEET THE PRELIMINARY INJUNCTION STANDARD AND, THEREFORE, HIS MOTION SHOULD BE DENIED.**

**1.  Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count I of his First Amended Complaint.**

In Count I of his First Amended Complaint, plaintiff seeks to recover under 42 U.S.C. § 1983 for defendants' alleged deprivation of his right to free speech as protected under the First

Amendment of the United States Constitution. The Constitution does not require government to grant access to all who wish to exercise their right of free speech on government property "without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799-800 (1985). The extent to which government can exercise control over speech on its property depends on the nature of the relevant forum. United States Postal Serv. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 129 (1981) ("First Amendment does not guarantee access to property simply because it is owned or controlled by the government.")

First Amendment law recognizes three types of fora; the traditional public forum, the designated public forum, and the limited or non-public forum. Ridley v. MBTA, 390 F.3d 65, 76 (1st Cir. 2004). The traditional public forum consists of "places which by long tradition or by government fiat have been devoted to assembly and debate …," such as streets, parks and public sidewalks. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). In a traditional public forum, content-neutral time, place and manner restrictions are subject to strict scrutiny and will only be upheld if they are "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." Id.

A designated public forum consists of public property that government has, by both expressed intention and actual practice, opened up as a place for expressive activity. Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469 (2009). Content-neutral restrictions on speech in a designated public forum "are subject to the same strict scrutiny as restrictions in a traditional public forum." Id., at 469-470; New England Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 20 (1st Cir. 2002).

A limited or non-public forum is created "when the government opens its property only to use by certain groups or for the discussion of certain subjects." Lu v. Hulme, 133 F. Supp. 3d 312, 324-325 (D. Mass. 2015) (citing Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 679 n.11 (2010)). Government has the right to preserve public property for the use to which it is lawfully dedicated and, therefore, reasonable restrictions on non-public fora are permitted. In a limited public forum, control over access "can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral." Cornelius, 473 U.S. at 806; Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-107 (2001). Content-based restrictions are permissible in limited public fora. Good News, 533 U.S. at 107.

The Public Speak segment of Seekonk School Committee meetings is not open to the general public. Nor is it a time when speakers may address any subject whatsoever. Rather, Public Speak is a time when "members of the Seekonk school community" may address "items that are not on the School Committee's agenda, but which are within the scope of the School Committee's authority." (Drolet Aff., Ex. "A"). Speakers must identify themselves by name and address and shall address their remarks through the Chair. Time limits apply to all speakers, and speakers should not engage in debate with the School Committee. (Id.) Given such restrictions, the Public Speak segment qualifies as a limited public forum. See Galena v. Leone, 638 F.3d 186, 199 (3rd Cir. 2011) (county council meeting held a limited public forum); Steinburg v. Chesterfield Cty. Planning Comm'n, 527 F.3d 377, 385 (4th Cir. 2008) (planning commission meeting held a limited public forum); Fairchild v. Liberty Ind. Sch. Dist., 597 F.3d 747, 759 (5th Cir. 2010) (public comment session of school board meeting held a limited public forum); Youkhanna v. City of Sterling Heights, 934 F.3d 508, 518-519 (6th Cir. 2019), cert. den., 140 S.Ct. 1114 (2020) (city

council meeting held limited public forum); <u>Rowe v. City of Cocoa, Fla.</u>, 358 F.3d 800, 803 (11th Cir. 2004) (public comment session of city council meeting held a limited public forum); <u>McBreairty v. School Bd. of RSU 22</u>, 2022 WL 2835458, at *7 (D. Me. July 20, 2022) ("[M]ost courts that have considered the issue have found that [school board meetings] fall in the limited public forum category"); <u>Grant v. Slattery</u>, 2022 WL 4550632, at *4 (D.N.J. Sept. 29, 2022) ("[T]he parties do not disagree that school board meetings are traditionally categorized as limited public forums.") (citations omitted).

While court decisions on the issue are not unanimous, "[t]he prevailing view is that a public-comment session is more akin to a limited public forum, in which content discrimination is permissible and government restrictions are viewed more deferentially." <u>F. LoMonte</u>, "The Open Mic, Unplugged: Challenges to Viewpoint-Based Constraints on Public-Comment Periods," 69 Case W. Res. L. Rev. 19, 33 (Fall 2018). The First Circuit has not yet decided the issue, but has stated: "[Town Meetings are] neither a traditional nor a designated public forum." <u>Curnin v. Town of Egremont</u>, 510 F.3d 24, 29 n.4 (1st Cir. 2007), <i>cert. den.</i>, 128 S.Ct. 2936 (2008) (quoting <u>United States v. Am. Library Ass'n</u>, 539 U.S. 194, 205 (2003)). If a Town Meeting is a limited public forum, a School Committee meeting, by analogy, is a limited public forum as well.[2]

Restrictions placed on plaintiff's speech were both "reasonable in light of the purpose served by the forum …," <u>Good News</u>, 533 U.S. at 106 (quoting <u>Cornelius</u>, 473 U.S. at 806); and viewpoint-neutral. <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 280 (3rd Cir. 2004). Therefore, such restrictions – <i>i.e.</i>, instructing plaintiff to leave the meeting after he yelled (and

---

[2] In <u>Mama Bears of Forsyth County v. McCall</u>, C.A. No. 2:22-cv-142-RWS (N.D. Ga. Nov. 16, 2022), the supplemental authority submitted by plaintiff in support of his Motion for Preliminary Injunction (ECF Doc. No. 40-1), the parties agreed that the public comment period of the Forsyth County School District Board of Education meetings was a limited public forum.

would not stop yelling) from the back of the meeting room – did not violate plaintiff's right of free speech. As the First Circuit has explained: "The reasonableness standard is not a particularly high hurdle; there can be more than one reasonable decision, and an action need not be the most reasonable decision possible in order to be reasonable." Ridley, 390 F.3d at 90.

The main purpose of the September 26, 2022 School Committee meeting was to conduct the business of SPS. A government body, like the School Committee, has a "significant governmental interest in conducting orderly, efficient meetings …." Carlow v. Mruk, 425 F. Supp. 2d 225, 242 (D.R.I. 2006) (quoting Rowe, 358 F.3d at 803). See Kindt v. Santa Monica Rent Control Bd., 67 F.3d 266, 271 (9th Cir. 1995) (board has "legitimate interest in conducting efficient orderly meetings"); McBreairty, 2022 WL 2835458, at *12 ("There is no question that the School Board's interest – conducting the orderly and undisrupted business of the School Board … and providing the opportunity for other members of the public to speak at School Board meetings – is significant.") Thus, any speech that disturbs or disrupts a meeting of a government body may be restricted. See Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989) (upholding ejection of speaker from city commission meeting based on "irrelevant" and "disruptive" speech); Steinburg, 527 F.3d at 385 ("disruption of the orderly conduct of public meetings is indeed one of the substantive evils that [government] has a right to prevent") (internal citation and quotation omitted). Shouting from the back of the room: "You're gonna let her talk!"; "This meeting's a joke!"; clearly disrupted the School Committee meeting. Furthermore, the ensuing instruction that plaintiff must leave the meeting was not based on his viewpoint. Rather, it was based on plaintiff's choice of words, tone, and manner of delivery.

The Massachusetts Legislature has made it clear that a government body need not tolerate disruptive speech or behavior at public meetings. The OML states, in part:

> (g) No person shall address a meeting of a public body without permission of the chair, and all persons shall, at the request of the chair, be silent. No person shall disrupt the proceedings of a meeting of a public body. If, after clear warning from the chair, a person continues to disrupt the proceedings, the chair may order the person to withdraw from the meeting and if the person does not withdraw, the chair may authorize a constable or other officer to remove the person from the meeting.

M.G.L. c. 30A, § 20(g). Following plaintiff's outbursts, the School Committee was entitled to ask plaintiff to leave under its Public Participation Policy, the OML and the First Amendment. Defendants did not violate plaintiff's freedom of speech. Therefore, he cannot show a substantial likelihood of success on the merits of Count I.

> The Massachusetts No Trespass Statute states in part:

> Whoever, without right enters or remains in or upon the … buildings … or improved or enclosed land … of another, … after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon, … shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine or imprisonment.

M.G.L. c. 266, § 120. As a three-judge District Court once observed: "[T]he trespass statute is not aimed at regulating speech or communication *in any form* …." Hurley v. Hinckley, 304 F. Supp. 704, 708 (D. Mass. 1969), *aff'd sub nom*, Doyle v. O'Brien, 396 U.S. 277 (1970) (per curiam) (emphasis added). Rather, it targets conduct – *i.e.*, trespassing. Thus, in Hurley, the Court rejected plaintiffs' claims that a municipality's use of the No Trespass Statute to restrict plaintiffs' access to Town Hall violated their First Amendment rights.

Admittedly, a permissible regulation may not be used to target conduct "intertwined" with protected speech on government property, "unless the actor or actors disrupt the uses to which the public has dedicated the property, or unreasonably interfere with the right of others to enter and leave the property." Hurley, 304 F. Supp. at 708 (citing Niemotko v. Maryland, 340 U.S. 268, 273-289 (1951) (Frankfurter, J., concurring)). See Greenberg v. Woodward, 2001 WL 1688902, at *3 (D. Mass. Dec. 12, 2001) (no First Amendment violation for enforcing statute against professor

who entered college building in violation of no trespass order). Here, defendants did not target plaintiff's speech. Superintendent Dr. Drolet issued the Modified Order to plaintiff based on Mr. Sousa's disruptive behavior at the School Committee meeting on September 26, 2022. Period. See Davison v. Rose, 19 F.4th 626, 635 (4th Cir. 2021) (upholding no-trespass letters issued to parent by school board absent showing that ban was issued because of plaintiff's protected speech, "as opposed to his threats and antagonistic behavior."); Grant, 2022 WL 4550632, at *5 (no First Amendment violation for school board's issuance of warning letter restricting plaintiff's further use of offensive and disrespectful language, as well as disruptive behavior); Wholey v. Tyrell, 567 F. Supp. 2d 279, 285-86 (D. Mass. 2008) (restrictions imposed on plaintiff's right to access certain school properties held not violative of First Amendment). Mr. Sousa was not recognized by the Chair, did not come forward to the podium and did not address his remarks to the Chair. Instead, he shouted his outbursts to the entire body from the back of the room while the Chair was attempting to advise plaintiff's wife that her Public Speak time had expired. Even when "pure speech" is at issue (which is not the case here), government may restrict "[t]he right to use a public place for expressive activity" through "reasonable 'time, place and manner' regulations [which] may be necessary to further significant government interests...." United States v. Bader, 698 F.2d 553, 555 (1st Cir. 1983) (quoting Grayned v. City of Rockford, 408 U.S. 104, 115 (1972)). The need to safeguard the "normal functioning of public facilities" is a "'substantial government interest" sufficient to warrant reasonable restrictions on even 'pure speech,' let alone symbolic conduct." Bader, 698 F.2d at 555 (quoting Adderley v. Florida, 385 U.S. 39 (1966)).

Enforcement of the Public Participation Policy by means of the Modified No Trespass Order did not violate plaintiff's freedom of speech. For this reason as well, plaintiff cannot show a substantial likelihood of success on the merits of Count I.

### 2. Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count II of his First Amended Complaint.

In Count II of his First Amended Complaint, plaintiff mounts a facial challenge to the Public Participation Policy on the grounds it is unconstitutionally vague because the word "respectful" can and has been used "pretextually and inconsistently." (ECF Doc. No. 1, ¶ 50). At the outset, a facial challenge to a statute, regulation or policy is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute, regulation or policy] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). See Washington v. Glucksberg, 521 U.S. 702, 739-740 & n.7 (1997) (Stevens, J., concurring) (facial challenge must fail where statute has a "plainly legitimate sweep"); Hightower v. City of Boston, 693 F.3d 61, 77-78 (1st Cir. 2012) (facial challenge fails where plaintiff fails to demonstrate statute lacks any "plainly legitimate sweep"). This burden of showing no "plainly legitimate sweep" is heightened in the context of the First Amendment where a statute will not be struck down as facially invalid unless "it prohibits a substantial amount of protected speech." Doe v. Hopkinton Pub. Schools, 19 F.4th 493, 509 (1st Cir. 2021) (quoting United States v. Williams, 553 U.S. 285, 292 (2008)).

Moreover, facial challenges are "disfavored," as they often rest on speculation and, as a result, "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008) (quoting Sabri v. United States, 541 U.S. 600, 609 (2004)). Such challenges also "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Id. (quoting Ashwander v. TVA, 297 U.S. 288, 346-347 (1936)) (quotations omitted). See Libertarian

Party of N.H. v. Gardner, 843 F.3d 20, 25 (1st Cir. 2016) (Court views facial challenge with "some skepticism" absent actual demonstration of constitutional violation).

Finally, courts are obligated, whenever possible, to construe statutes narrowly so as to avoid constitutional difficulties. Boos v. Barry, 485 U.S. 312, 331 (1988). See National Pharmacies, Inc. v. Feliciano-de-Melecio, 221 F.3d 235, 241 (1st Cir. 2000) (federal courts render interpretations of state law using same methods as state courts, including principle that statutes should be given constitutional interpretations where possible); O'Brien v. Borowski, 461 Mass. 415, 422 (2012) (Massachusetts courts construe statutes narrowly to avoid unconstitutional results).

Here, the Public Participation Policy does not lack any "plainly legitimate sweep." As a public body, the School Committee is clearly permitted to adopt reasonable rules of order and decorum to conduct SPS business. In such rules, the School "encourages," *but does not require*, all Public Speak participants to "present their remarks in a respectful manner." Notwithstanding that plea for civility, the School Committee warns the public: "Because of constitutional free speech principles, the School Committee does not have the authority to prevent all speech that may be upsetting and/or offensive at Public Speak." (Drolet Aff., Ex. "A"). Indeed, the School Committee expressly acknowledges that the Chair "may not interrupt speakers who have been recognized to speak," except "to terminate speech which is not constitutionally protected …." In light of such limitations, it is abundantly clear that disrespectful remarks which are otherwise protected by the First Amendment *are not prohibited* by the Public Participation Policy. This interpretation of the Policy comports with the First Amendment.

On November 21, 2022, plaintiff filed a Notice of Supplemental Authority (ECF Doc. No 40) in further support of his Motion for a Preliminary Injunction. Attached as Exhibit A to such

Notice is a copy of a recent decision from the District Court of the Northern District of Georgia captioned <u>Mama Bears of Forsyth County v. McCall</u> (ECF Doc. No. 40-1). In <u>Mama Bears</u>, the District Court upheld a facial challenge to a public participation policy requirement that the public "shall conduct themselves in a respectful manner" when addressing the Board of Education of the Forsyth County School District. In the Court's view, such a requirement "impermissibly targets speech unfavorable to or critical of the Board while permitting other positive, praiseworthy, and complimentary speech." But see <u>Davis v. Colerain Township</u>, 551 F. Supp. 3d 812, 821 (S.D. Ohio 2021) (upholding restriction on "disrespectful" comments during township meetings as reasonable regulation designed "to further the government's purpose of conducting an orderly, efficient and productive meeting"). Again, the Seekonk Public Participation Policy contains no such requirement. On the contrary, the Seekonk Public Participation Policy merely "*encourage[s]* [speakers] to present their remarks in a respectful manner." (ECF Doc. No. 16-1, Exhibit A). In short, "respectful" public discourse is a request, not a command. In <u>Mama Bears</u>, the Court expressly recognized the difference between policy "requirements" and "aspirational provisions." While the former may render a participation policy unconstitutional, the latter, noted the Court, may not. "[I]t can be acceptable for the Board to seek and request a certain level of decorum during its meetings, so long as that aspiration is not impermissibly treated as a mandate." The Seekonk School Committee encourages "respectful" conduct but does not mandate it. The <u>Mama Bears</u> Court went on to reject plaintiffs' challenge to the Forsyth County public participation policy on the grounds it requested speakers to keep their remarks civil, prohibited the use of obscene language, and prohibited loud and boisterous conduct or comments. In short, the <u>Mama Bears</u> decision does nothing to advance Mr. Sousa's cause.

Courts have repeatedly held that government rules prohibiting disruption in limited public forums and requiring participants to maintain order and decorum are content-neutral and, therefore, constitutional. <u>Dyer v. Atlanta Ind. Sch. System</u>, 852 Fed. App'x 397, 402 (11th Cir.), *cert. denied*, 142 S.Ct. 484 (2021); <u>Moms for Liberty – Brevard County, FL v. Brevard Public Schools</u>, 582 F. Supp. 3d 1214, 1218 (M.D. Fla. 2022). Plaintiff cannot show a substantial likelihood of success on the merits of Count II.

   3.   **Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count III of his First Amended Complaint.**

In Count III of his First Amended Complaint, plaintiff seeks to recover against defendants under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. He cannot do so for at least two reasons. First, plaintiff fails to allege sufficient facts to show that he is a "qualified individual with a disability." A disability is "a physical or mental impairment that substantially limits one or more major life activities …." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.108. See <u>Carreras v. Sajo, Garcia & Partners</u>, 596 F.3d 25, 32 (1st Cir. 2010) (plaintiff bears burden of establishing disability sufficient to state a prima facie of discrimination). Plaintiff must also show that his alleged disability "substantially limits one or more major life activities …." 42 U.S.C. § 12102(1)(A). "The identification of a major life activity is a necessary step in proving a disability." <u>Charles v. Johnson</u>, 18 F.4th 686, 703 (11th Cir. 2021) (citing <u>Bragdon v. Abbott</u>, 524 U.S. 624, 631 (1998)). Finally, to establish his disability, plaintiff must show that his impairment imposes a "substantial" limitation on a major life activity. 42 U.S.C. § 12102(1)(A).

> An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

28 C.F.R. § 35.108(d)(1)(v); Carreras, 596 F.3d at 33. According to the First Circuit, the determination as to whether an impairment "substantially limits" a major life activity "calls for a comparison between the plaintiff's limitations and those of the majority of people in the general population." Mancini v. City of Providence, 909 F.3d 32, 42 (1st Cir. 2018).

Plaintiff alleges he has a "bipolar disorder, which causes Pressured Speech, a symptom of which is loud talking." (ECF Doc. No. 27, ¶ 114). Even if his disorder qualifies as a physical or mental impairment, plaintiff fails to show how the symptom of loud talking imposes a "substantial" limitation on a "major life activity." While an incapacity (or limited capacity) to modulate the volume of one's voice may interfere with the ability to perform a major life activity, no such showing is offered here. Nor does plaintiff explain how the "substantial" limitation on a major life activity allegedly impacts his participation in School Committee meetings.

Second, to recover under the ADA, a "plaintiff must demonstrate that a denial of benefits occurs 'by reason of ... disability,' 42 U.S.C. § 12132, which essentially means that the plaintiff must prove that the denial is 'because of' the disability …." Henrietta D. v. Bloomberg, 331 F.3d 261, 278 (2d Cir. 2003) (quoting Olmstead v. L.C., ex rel. Zimring, 527 U.S. 581, 601 (1999) (Kennedy, J., concurring)). Here, plaintiff cannot show that the No Trespass Order was issued "by reason of" or "because of" of his alleged "disability." Rather, the No Trespass Order was issued for the disruptive behavior plaintiff exhibited at the School Committee meetings held on January 5, 2022 and September 26, 2022. (ECF Doc. No. 16-1, ¶¶ 6 – 8, 12 – 14). See Buchanan v. Maine, 469 F.3d 158, 177 (1st Cir. 2006) (plaintiff failed to allege denial of benefits was "by reason of" his mental illness where police training was insufficient to assist officers in communicating with mentally ill patients); Bush v. Fantasia, 2022 WL 4134501, at *9 (D. Mass. Sept. 12, 2022) (plaintiffs failed to allege sufficient facts to plausibly suggest they were excluded from Library

"by reason of" a disability). As a result, plaintiff cannot show a substantial likelihood of success on the merits of Count III.

### 4. Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits Under Count IV of his First Amended Complaint.

In Count IV of his First Amended Complaint, plaintiff seeks recovery under 42 U.S.C. § 1983 for the alleged deprivation of his rights to equal protection as guaranteed under the Fourteenth Amendment. Even though plaintiff does not claim membership in a protected class or group, he may nonetheless press a "class of one" equal protection claim if he was "intentionally treated differently from others similarly situated and … there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Such differential treatment must be "motivated by 'bad faith or malicious intent to injure.'" Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (quoting Rabinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995)). Moreover, a "class of one" claim requires a plaintiff to "identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled … out for unlawful oppression." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (citations omitted) (emphasis in original).

The First Circuit has "place[d] the burden on the plaintiff … to show such identity of entities and circumstances to a high degree." Middleborough Veterans' Outreach Ctr., Inc. v. Provencher, 502 Fed. App'x 8, 11 (1st Cir. 2013) (quoting Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 15-16 (1st Cir. 2010) (equal protection claim dismissed where plaintiff failed to allege sufficient details regarding comparability of alleged comparators.))  This burden is meant to be "very significant." Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007).

In his First Amended Complaint, plaintiff alleges he was singled out for "unfair treatment and punishment." No other speaker, he insists, was given a 20-second countdown, immediately ejected by law enforcement after only three minutes and one second, or given a lifetime ban from school property. (ECF Doc. No. 27, ¶¶ 125-128). Fatally, however, plaintiff fails to identify *specific instances* where persons situated similarly "in all relevant aspects" were treated differently. He does not identify other speakers, the School Committee meetings they allegedly attended, for how long each person spoke or the subjects on which they spoke. Without such specific instances, plaintiff cannot prevail on his "class of one" equal protection claim. Freeman v. Town of Hudson, 714 F.3d 29, 39–40 (1st Cir. 2013) (complaint's "failure to do more than conclusorily state that the [plaintiffs] were both similarly situated to and treated differently from unspecified 'other contractors' is insufficient to survive the defendants' motion to dismiss"); Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 144 (1st Cir. 2016) (failure to provide details of other projects similarly situated to plaintiff defeated equal protection claim). As a result, plaintiff cannot show a substantial likelihood of success on the merits of Count IV.

**5.     The Balance of Hardships and the Public Interest Weigh Against an Award of Injunctive Relief to Plaintiff.**

As stated above, plaintiff bears the burden of establishing that the four factors of a preliminary injunction weigh in his favor. Esso Std. Oil, 445 F.3d at 18. Insofar as the third factor is concerned – the balance of hardships – the standard to be applied is a "stringent" one, requiring a court to carefully weigh the interests on both sides. Rushia v. Town of Ashburnham, Mass., 710 F.2d 7, 10 (1st Cir. 1983) (citing Doran v. Salem Inc, Inc., 422 U.S. 922, 931 (1975)). Here, the purpose of the September 26, 2022 School Committee was to conduct SPS business. Although the School Committee invited the Seekonk school community to participate in the meeting by including Public Speak on the agenda, it was not required to do so. To be clear, members of the public do not have a guaranteed right "to be heard by public bodies making decisions of policy." Minnesota State Bd. for Community Coll. v. Knight, 465 U.S. 271, 284 (1984). See Heffron v. International Soc. for Krishna Consciousness, 452 U.S. 640, 647 (1981) ("First Amendment does not guarantee [persons] the right to communicate [their] views at all times and places or in any manner that may be desired."); Kindt, 67 F.3d at 269 ("Citizens are not entitled to exercise their First Amendment rights whenever and wherever they wish.")

Admittedly, when government creates a forum for citizen input at public meetings such as Public Speak, constitutional guarantees apply. Still, government may require speakers to adhere to reasonable rules of civility during its meetings or proceedings, provided it does not do so in a way that silences viewpoints it disfavors. See Rowe, 358 F.3d at 803 ("There is a significant governmental interest in conducting orderly, efficient meetings of public bodies."); Steinburg, 527 F.3d at 387 ("[A] content-neutral policy against personal attacks is not facially unconstitutional" so long as it serves "the legitimate public interest … of decorum and order"); White v. City of

19

Norwalk, 900 F.2d 1421, 1426 (9th Cir. 1990) (rules of decorum that proscribe against "personal, impertinent, slanderous or profane" remarks at city council meeting held not unconstitutional).

"[L]ocal entities can adopt rules of decorum that require speakers at government meetings to maintain relevancy and civility when commenting." T. Day & E. Bradford, "Civility in Government Meetings: Balancing First Amendment, Reputational Interests, and Efficiency," 10 First Amend. L. Rev. 57, 63 (2011).

> The "policy against 'personal attacks' focuses on two evils that could erode the beneficence of orderly public discussion." These policies further the dual interests of keeping public discussion on topic and reducing defensiveness and counter-argumentation. Both of these interests serve to maintain the orderly conduct of the meeting.

Id., at 63-64 (footnotes omitted). And any public speaker who violates such rules or policy may be excluded from a meeting provided the exclusion is not an effort to suppress the expression of views contrary to public officials. Cornelius, 473 U.S. at 800.

Defendants do not take lightly plaintiff's protected right of free speech. But where plaintiff exercises that right while simultaneously engaging in inappropriate conduct that disrupts the School Committee's ability to conduct important SPS business, the School Committee cannot (and should not) overlook the misbehavior simply because it accompanies a message. The public has a right to attend School Committee meetings without disruption. The School Committee has a right to conduct SPS business without disruption. At the same time plaintiff remains free to communicate with the School Committee and Superintendent via mail, email or telephone. Plaintiff has failed to make a "clear showing" that he is entitled to the "extraordinary and drastic" relief of a preliminary injunction and, therefore, his Motion should be denied.

## IV. CONCLUSION

For the reasons set forth above, this Honorable Court should deny plaintiff's Renewed Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

The Defendants,
SEEKONK SCHOOL COMMITTEE, and
RICH DROLET, in his personal and official capacities,

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ John J. Davis*
_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: November 28, 2022

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on November 28, 2022.

*/s/ John J. Davis*
_____
John J. Davis, Esq.