UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIS SOUSA,<br>    *Plaintiff,*<br><br>vs.<br><br>SEEKONK SCHOOL COMMITTEE, RICH DROLET, in his personal and official capacities, and KIMBERLY SLUTER, in her personal and official capacities,<br>    *Defendants*. | C.A. NO. 1:22-cv-40120-IT |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR AN ADVERSE INFERENCE**

This case arises from Superintendent Dr. Rich Drolet's lawful issuance of a Modified No Trespass Order to the plaintiff, Luis Sousa, based on plaintiff's disruptive behavior and conduct on Seekonk Public Schools ("SPS") property on two occasions – January 5, 2022, and September 26, 2022. Plaintiff filed his original Complaint on October 20, 2022, more than ten months after the January 5, 2022 incident. (ECF Doc. No. 1). Plaintiff filed his First Amended Complaint three weeks later, on November 11, 2022. (ECF Doc. No. 27). In his First Amended Complaint, plaintiff alleges (among other things) that the Modified No Trespass Order violates his rights to free speech as protected under the First Amendment.

On December 12, 2022, plaintiff's counsel requested the production of video footage recorded from any surveillance cameras mounted outside Hurley Middle School, the site of plaintiff's first disruption on January 5, 2022. On or about December 15, 2022, defense counsel advised plaintiff's counsel that no such video footage existed as any recordings from surveillance cameras are routinely deleted and overwritten every 30 days per Seekonk Public Schools' routine practice. On December 16, 2022, plaintiff filed a Motion for an Adverse Inference pursuant to Fed. R. Civ. P. 37(e) (ECF Doc. No. 64), together with a Memorandum of Law in support. (ECF

1

Doc. No. 65). In his Motion, plaintiff claims defendants "spoliated their surveillance footage of Plaintiff's January 5, 2022 protest." Because of such alleged "spoliation," this Court (plaintiff argues) should draw an adverse inference against defendants in plaintiff's pending Motion for a Preliminary Injunction and other pretrial matters "and instruct the jury as to the same at trial." (ECF Doc. No. 64).

Defendants are not in possession of any video recordings of the January 5, 2022 incident because the routine retention schedule of the surveillance camera at issue is 30 days. Thus, video footage of the January 5, 2022 incident (if any) was deleted and written-over by Seekonk Public Schools on or about February 4, 2022. By that time, plaintiff had submitted no claim against defendants for the alleged violation of his civil rights, nor had he placed defendants on notice of his intent to file suit. The Court should deny plaintiff's motion. In further support of their opposition, defendants direct the Court to the previously submitted Affidavit of Superintendent Dr. Drolet and exhibits attached thereto (ECF Doc. No. 16-1); as well as the attached Affidavit of Colleen Terrill, Director of Technology and Digital Learning at Seekonk Public Schools. ("Terrill Aff.")

I.   **Introduction**

Plaintiff has twice disrupted meetings of the Seekonk School Committee; first on January 5, 2022, and again on September 26, 2022. For purposes of the present opposition, defendants focus on the January 5, 2022, incident. Specifically, on January 5, 2022, plaintiff attempted to enter a Seekonk School Committee meeting being held in executive session at the Seekonk School Department Offices, 25 Water Lane, Seekonk, MA. (ECF Doc. No. 16, ¶¶ 6-7). Although the meeting was not open to the public, plaintiff nonetheless attempted to enter. (Id.) When he was unsuccessful, plaintiff approached the meeting room from outside the building and began to record

the proceedings through the windows.  (Id.)  As he did so, plaintiff yelled: "Why are we not allowed at the meeting? You cancelled two meetings. Why can't we go?" The School Committee Chair suspended the meeting and called the Seekonk Police Department.  (Id.)

The Seekonk School Department Offices are housed at Hurley Middle School.  As part of the overall SPS security system, Hurley Middle School is equipped with surveillance cameras, including a surveillance camera positioned outside the room where the School Committee meeting was held on January 5, 2022.  (Terrill Aff., ¶ 2).  The surveillance camera at the time of the January 5, 2022 incident was approximately 40 to 50 feet away from the meeting room windows.[1]  (Id., ¶ 3).  The surveillance camera recorded video images only; it did not record audio.  (Id., ¶ 4).  The SPS IT Department programed the surveillance camera to retain the video recordings for 30 days only. (Id., ¶ 4).  After 30 days, surveillance footage (if any) was automatically written over unless expressly preserved.  (Id., ¶ 6).  30 days is the standard retention schedule for the SPS security system.  (Id., ¶ 7).  Prior to February 4, 2022, the SPS IT Department received no request to preserve any video images recorded on January 5, 2022.  (Id., ¶ 8).  Thus, any content was automatically deleted on or about February 4, 2022.[2]  The defendants do not have any surveillance footage of plaintiff's disruptive behavior on January 5, 2022 in their custody, control, or possession.  (Id., ¶ 10). Prior to February 4, 2022, plaintiff made no claim that his First Amendment rights to free speech were violated.

## II. Argument

A. <u>Plaintiff Fails to Demonstrate That an Adverse Inference is Warranted</u>

---

[1] The camera was replaced as part of a planned system upgrade in the Summer of 2022.  (Terrill Aff., ¶ 5).
[2] The January 5, 2022 incident occurred at approximately 4:05 p.m.  (ECF Doc. No. 16-1, ¶ 7). On January 5, 2022, the sun set at approximately 4:29 p.m.  As the camera did not record audio, plaintiff's yelling (if any) could not have been heard.  (Id., ¶ 4).

At the outset, Rule 37(e) applies only to electronically stored information ("ESI") that "should have been preserved in the anticipation or conduct of litigation …." Fed. R. Civ. P. 37(e). See Fed. R. Civ. P. 37 Advisory Committee Notes ("The rule does not apply when information is lost before a duty to preserve arises.") Further, the failure to preserve ESI may warrant sanctions only if the evidence "is lost because a party failed to take reasonable steps to preserve it …." Id. See Fed. R. Civ. P. 37 Advisory Committee Notes ("[T]he routine, good-faith operation of an electronic information system would be a relevant factor for the court to consider in evaluating whether a party failed to take reasonable steps to preserve lost information ….") Only after these elements are met may a Court turn to determining appropriate sanctions. Venture Group Enterprises, Inc. v. Vonage Business, Inc., 2022 WL 4814830, at *2 (S.D.N.Y. Sept. 30, 2022).

Under Rule 37(e)(1), the Court, upon a finding of prejudice to another party from loss of the information, may "order measures no greater than necessary to cure the prejudice[.]" Under Rule 37(e)(2), the Court may take additional action, including presuming that the lost information was unfavorable to the party, instructing the jury that it may or must presume that the information was unfavorable to the party, or dismiss or enter a default judgment in the action. Fed. R. Civ. P. 37(e)(2)(A), (B), (C).

Importantly, Rule 37(e)(2) states that the Court may enter an adverse inference "only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation[.]" Furthermore, and contrary to plaintiff's Memorandum in Support of his Motion for an Adverse Inference, Rule 37 does not "require" that curative measures be taken. (ECF Doc. No. 65). Indeed, the use of the word "may" throughout Rule 37(e) imports discretion. See Hefter Impact Techs., LLC v. Sport Maska, Inc., 2017 WL 3317413, at *6 (D. Mass. Aug. 3, 2017) ("[t]he

4

Advisory Committee Notes to the 2015 amendment to Rule 37(e) provide that the Court has "discretion to determine how best to assess prejudice in [a] particular case . . . .").

A party requesting an adverse inference must make a threshold showing that the unavailable evidence was intentionally destroyed. See Booker v. Mass. Dep't of Public Health, 612 F.3d 34, 46 (1st Cir. 2010) (citing Moulton v. Bane, 2015 WL 7776892, at *1 (D.N.H. Dec. 2, 2015)). The party that puts forth the spoliation argument "'must proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the [evidence's] potential relevance to that claim.'" Rivera v. Sam's Club Humacao, 386 F. Supp. 3d 188, 200 (D.P.R. 2018) (quoting Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998)). "Even then, the adverse inference is permissive, not mandatory. If, for example, the factfinder believes that the documents were destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference." Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir. 1996). See also Wai Feng Trading Co. Ltd v. Quick Fitting, Inc., 2019 WL 118412, at *7 (D.R.I. Jan. 7, 2019) (noting the intent requirement of Rule 37(e)(2) is "stringent").

Plaintiff is unable to demonstrate that the Seekonk Public Schools knew of a claim or potential for litigation in early February, 2022. When the video was overwritten per the SPS system's retention schedule, this case was not in suit. Indeed, the January 5, 2022 incident, was the first incident giving rise to the No Trespass Orders issued in this case. On January 10, 2022, Superintendent Drolet issued a Temporary No Trespass Order to plaintiff based on his conduct on January 5, 2022. That Temporary No Trespass Order was subsequently lifted in April or May. (ECF Doc. No. 16-1, ¶ 11). Before then, plaintiff made no attempt to challenge the Order or pursue his alleged First Amendment rights. Thus, there is scant evidence to suggest that when the video

was automatically overwritten in early February, 2022, defendants were aware or on notice that the January 5, 2022 incident would ultimately result in litigation. See Ward v. Schaefer, 2019 WL 13196106, at *7 (D. Mass. Sept. 18, 2019) (stating the "reasonably foreseeable" standard is a flexible, fact-specific standard that allows a district court to exercise discretion).

Plaintiff claims that "someone making a criminal complaint would keep footage of the alleged activity." (ECF Doc. No. 65). However, no criminal complaint was issued in this matter. See Mass. R. Crim. P. 3 (a) ("[a] criminal proceeding shall be commenced in the District Court by a complaint and in the Superior Court by an indictment . . ."). Nor was an arrest made. Instead, Seekonk Police merely responded to the Hurley Middle School to investigate a report of a disturbance in the parking lot. Where no criminal action arose from the January 5, 2022 incident, and where the plaintiff first filed his Complaint in this matter approximately 10 months later, it can hardly be said that defendants were on notice in February, 2022, that the video might be relevant to the current litigation.

Furthermore, plaintiff's motion fails to adduce even circumstantial evidence to support a finding that the surveillance footage was intentionally destroyed. See Blinzler, 81 F.3d at 1159 (noting that circumstantial evidence will suffice and that plaintiff need not offer direct evidence of a coverup). Plaintiff's motion fails on that ground alone. See Booker, 612 F.3d at 46. The footage in question was overwritten through an automated process, and there is no evidence to suggest the video was deleted with a culpable state of mind. E.E.O.C. v. Chipotle Mexican Grill, 98 F. Supp. 3d 198, 211 (D. Mass. 2015) (denying motion for sanctions based on spoliation and noting that surveillance footage in question was erased automatically and not through any intentional act on the part of the defendant). See also Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 109 (2d Cir. 2001); cf. Fed. R. Civ. P. 37(e) ("Absent exceptional circumstances, a court may not

impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."). Where the video here was overwritten through a routine, automatic process, prior to the defendants being on notice of the potential for litigation, plaintiff is unable to make the threshold showing that the video was overwritten intentionally. See, e.g., Easterwood v. Carnival Corp., 2020 WL 6781742, at *8 (S.D. Fla. Nov. 18, 2020) (denying motion for adverse inference where, *inter alia*, video was automatically taped over by routine system process); Garcia v. United States, 2014 WL 12709430, at *2 (C.D. Cal. Sept. 3, 2014) (denying motion for adverse inference where plaintiff failed to establish that defendant had duty to preserve video prior to lapse of 30-day automatic deletion cycle); Webb v. Jessamine Cnty. Fiscal Ct., 2011 WL 3652751, at *6 (E.D. Ky. Aug. 19, 2011) (declining motion for adverse inference based on lost recordings as such recordings were lost in the routine operation of video system and no showing defendants should have reasonably anticipated litigation); Olson v. Sax, 2010 WL 2639853, at *3 (E.D. Wis. June 25, 2010) (denying motion for adverse inference where video was overwritten as part of "routine good faith operation of its video system"). (Terrill Aff., ¶ 6).

B. Plaintiff's Motion is Premature and Therefore Should Be Denied.

Even assuming plaintiff's Motion for an Adverse Inference was meritorious, it is premature. See Maquet Cardiovascular LLC v. Abiomed, Inc., No., 2022 WL 4134477, at *9 n. 6 (D. Mass. Sept. 12, 2022) (declining to enter adverse inference in discovery stage of case where it was "premature at best"). "During trial, plaintiff is free to ask questions and introduce evidence that may provide an evidentiary basis for an adverse inference." Zagklara v. Sprague Energy Corp., 2013 WL 12234457, at *1 (D. Me. Jan. 15, 2013) (citing Booker, 612 F.3d at 46). Such a motion is unnecessary at this stage in the litigation. See Wai Feng Trading Co. Ltd., 2019 WL

118412 at *7 (citing Scott v. IBM Corp., 196 F.R.D. 233, 250 (D.N.J. 2000), as amended, (Nov. 29, 2000) (stating "courts often consider it premature to conclude that a spoliation instruction will actually be given until the final charge conference").

## IV.  CONCLUSION

For the reasons set forth above, the defendants request that this Honorable Court deny plaintiff's Motion for an Adverse Inference.

> Respectfully submitted,
>
> The Defendants,
> SEEKONK SCHOOL COMMITTEE, KIMBERLY SLUTER, in her personal and official capacities, and RICH DROLET, in his personal and official capacities,
>
> By their Attorneys,
>
> **PIERCE DAVIS & PERRITANO LLP**
>
> */s/ Matthew J. Hamel*
> _____
> John J. Davis, BBO #115890
> Matthew J. Hamel, BBO #706146
> 10 Post Office Square, Suite 1100N
> Boston, MA 02109
> (617) 350-0950
> jdavis@piercedavis.com
> mhamel@piercedavis.com

Dated: December 30, 2022

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on December 30, 2022.

> */s/ Matthew J. Hamel*
> _____
> Matthew J. Hamel, Esq.