UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LUIS SOUSA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:22-cv-40120-IT |
| | * | |
| SEEKONK SCHOOL COMMITTEE; RICH | * | |
| DROLET, in his personal and official | * | |
| capacities; KIMBERLY SLUTER, in her | * | |
| personal and official capacities, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

January 12, 2023

TALWANI, D.J.

Plaintiff Luis Sousa initiated this action on October 20, 2022. The Amended Complaint
[Doc. No. 27] alleges violations of Sousa's First and Fourteenth Amendment rights and the
Americans with Disabilities Act by the Seekonk School Committee (the "School Committee"),
Rich Drolet, Superintendent of Seekonk Public Schools, and Kimberly Sluter, School Committee
member. Pending before the court is Sousa's Motion for Adverse Inference [Doc. No. 64]
seeking an adverse inference related to deleted security surveillance footage taken on January 5,
2022. Defendants oppose Sousa's Motion. See Opp. [Doc. No. 83]. For the reasons that follow,
Sousa's motion is DENIED.

## I.    Factual Background

On January 5, 2022, Sousa arrived at the School Committee when it was meeting in
executive session behind locked doors in the Superintendent's office. Amend. Compl. ¶¶ 8-9
[Doc. No. 27]; Drolet Aff. ¶ 7 [Doc. No. 16-1]. According to a report of the Seekonk Police
Department, Sluter called the Seekonk Police Department and reported that Sousa was yelling

and banging on the windows. Amend. Compl. Ex. 4 (Police Report) [Doc. No. 27-4]. The Police Report states further that when Officer Brian T. DiCristoforo arrived, Sousa denied banging on the windows, and stated that he was yelling because he wanted to know why there was no public speak segment. Id. Sousa played a video recording he had made during the incident. Id. After the officer reviewed the video and spoke with Sousa and Sluter, Sousa left the parking lot. No arrest was made and no criminal charges were brought.

The incident was also recorded by a video surveillance camera at Hurley Middle School which was positioned roughly 40 to 50 feet away from the meeting room window. Terrill Aff. ¶¶ 2-4 [Doc. No. 83-1].

On January 10, 2022, Drolet sent Sousa a temporary no trespass order stating that Sousa had "caused a disturbance during the School Committee's executive session" on January 5, 2022. Amend. Compl. Ex. 5 (January 10, 2022 Letter) [Doc. No. 27-5]; Drolet Aff. ¶ 9 [Doc. No. 16-1]. On January 18, 2022, Sousa and Drolet met to discuss the incident. See Amend. Compl. Ex. 6 [Doc. No. 27-6]. Sousa denied yelling, screaming, or banging on the window. Id. at 6:00-12:30; see also Sousa Decl. ¶¶ 7, 19 [Doc. No. 62-1] (denying banging on the windows at any time and denying screaming before the recording of the video). Drolet stated that School Committee members had felt "threatened," Amend. Compl. Ex. 6 [Doc. No. 27-6] at 18:20-18:30, and that the January 10, 2022 letter did not reference the alleged banging or screaming, id. at 3:00-3:08. On January 24, 2022, Sousa attended the School Committee meeting and played his recording of the January 5, 2022 incident. Am. Compl. ¶¶ 58-66 [Doc. No. 27].

The surveillance camera was programed to retain video recordings for 30 days, and after 30 days, surveillance footage is automatically written over unless expressly preserved. Terrill Aff. ¶¶ 6-7 [Doc. No. 83-1]. The Seekonk Public School IT Department received no request for

the surveillance footage during the 30 days following the incident. Id. at ¶¶ 8-9. At some point after February 4, 2022, the surveillance footage from January 5, 2022, was automatically written over and Defendants are not in possession of any video recording from the outside surveillance camera from that day. Opp. 3 [Doc. No. 83]; Terrill Aff. ¶¶ 6, 10 [Doc. No. 83-1].

In April or May 2022, Drolet lifted the no trespass order. Opp. 5 [Doc. No. 83]; Drolet Aff. ¶ 11 [Doc. No. 16-1].

On September 26, 2022, Sousa attended the School Committee meeting. Am. Compl. ¶ 30 [Doc. No. 27]. Following that meeting, Drolet issued a permanent no trespass order, which Drolet stated was based on Sousa's behavior at the September 26, 2022 School Committee meeting and on January 5, 2022 while the School Committee was in Executive Session. Amend. Compl. Ex. 13 (Permanent No Trespass Order) [Doc. No. 27-13].[1]

On October 20, 2022, and November 11, 2022, Sousa filed his Verified Complaint [Doc. No. 1] and Amended Complaint [Doc. No. 27].

On December 12 and 13, 2022, Sousa's counsel requested the surveillance footage by email. Randazza Aff. [Doc. No. 62-2] ¶¶ 4-5; Opp 1 [Doc. No. 83]. No prior request had been made by Sousa or his counsel for the surveillance video or its preservation. Terrill Aff. ¶¶ 8-9 [Doc. No. 83-1]. Defendants informed Sousa that they did not have any footage of the incident and that any footage from January 5, 2022, was automatically written over in March 2022. Id. at ¶ 10; Randazza Aff. [Doc. No. 62-2] ¶ 7. The pending motion followed.

---

[1] On November 23, 2022, this Order was rescinded and replaced with a Modified No Trespass Order [Doc. No. 41-1], which forbids Sousa from entering Seekonk Public School premises for the purpose of attending School Committee meetings for one year, until November 23, 2023.

## II.     Discussion

Under Federal Rule 37(e) of Civil Procedure, "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court, "upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may," among other remedies, "presume that the lost information was unfavorable to the party" and so instruct the jury. Fed. R. Civ. P. 37(e)(2)(A), (B).

"The duty to preserve evidence arises when litigation is reasonably anticipated." Gordon v. Dreamworks Animation SKG, Inc., 935 F. Supp. 2d 306, 314 (D. Mass. 2013) (internal quotation marks and citation omitted). "Before an adverse inference can arise, the sponsor of the inference must lay an evidentiary foundation, proffering evidence sufficient to show that the party who destroyed the document 'knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim.'" Booker v. Massachusetts Dep't of Pub. Health, 612 F.3d 34, 46 (1st Cir. 2010) (quoting Testa v. Wal–Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir.1998)). "A spoliation instruction is not warranted absent this threshold showing, because the trier of fact would have no basis for inferring that the destruction of documents stemmed from the party's consciousness that the documents would damage his case." Id.

Here, Sousa has failed to show that electronically stored information should have been preserved. There was neither pending litigation nor reasonably anticipated litigation at the time the video footage was overwritten. Although Sousa claims that a criminal complaint, or the threat of a criminal complaint, was initiated when Sluter called the police on January 5, 2022, any such

potential criminal proceeding was terminated that same day when the Seekonk Police

Department allowed Sousa to leave and did not contemplate charges. And while Drolet issued a

temporary No Trespass Order on January 10, 2022, and Sousa objected at the January 24, 2022

School Committee meeting, there is no suggestion that litigation was threatened by the School

Committee or by Sousa at any time prior to the erasure of the video. It was more than seven

months later, in late September 2022, that the dispute resumed, and it was not until October 20,

2022, that Sousa initiated this action. In sum, Sousa has not shown that the January 5, 2022

surveillance video should have been preserved in anticipation of litigation by the time the

surveillance footage was erased.

Even if this threshold requirement had been met, there is no showing that the deletion

was willful. See In re Pharm. Indus. Average Wholesale Price Litig., 2007 WL 9723958, at *5

(D. Mass. Mar. 14, 2007) (courts may impose the "sanction of an adverse inference in cases of

willful destruction of documents."). Plaintiff asserts that Defendants "destroyed" the video. Pls.

Mem. 3 [Doc. No. 65]. But Plaintiff makes no showing that the erasure of the surveillance

footage was anything other than an automatic over writing, much less that a deletion occurred

with the intent to deprive him of the information's use in the litigation. See Hefter Impact Techs.,

LLC v. Sport Maska, Inc., 2017 WL 3317413, at *8 (D. Mass. Aug. 3, 2017) ("In determining

what sanctions to apply upon a finding of spoliation, courts consider, among other things,

whether a party acted in good faith or bad faith . . . .").

### III.   Conclusion

Accordingly, Sousa's Motion for Adverse Inference [Doc. No. 64] is DENIED.

IT IS SO ORDERED.

January 12, 2023                          /s/ Indira Talwani
                                          United States District Judge